## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| ERIC ANTHONY RODRIGUEZ, | Case No.: 6:23-cv-2487 |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| TRANSUNION RENTAL SCREENING SOLUTIONS, INC., NATIONAL TENANT NETWORK, INC., | |
| Defendants. | |

## COMPLAINT

Eric Anthony Rodriguez ("Plaintiff" or "Mr. Rodriguez") by and through his counsel brings the following Complaint against TransUnion Rental Screening Solutions, Inc. ("Defendant TransUnion") and National Tenant Network, Inc. ("Defendant National") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening reports that Defendants published to Plaintiff's potential landlords, which falsely included numerous criminal records which did not belong to Plaintiff.

## INTRODUCTION

1.     This is an individual action for damages, costs, and attorney's fees brought against Defendants pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.      Defendants are consumer reporting agencies ("CRA") that compile and maintain files on consumers on a nationwide basis.  They sell consumer reports, also known as tenant screening reports, generated from their database and furnish these tenant screening reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3.      Defendants assembled and published an inaccurate tenant screening report to Plaintiff's prospective landlords, which included numerous felony and misdemeanor convictions.

4.      The records reported by Defendants *do not* belong to Plaintiff, rather they belong to another consumer with a different name, different address information, and a different security number.

5.      Plaintiff's prospective landlords denied Plaintiff's housing applications after receiving the tenant screening reports from Defendants, in which Defendants published numerous felony and misdemeanor convictions, which do not belong to Plaintiff.

6.      Defendants' inaccurate reporting could have easily been avoided had Defendants performed a cursory review of the widely available underlying public court records pertaining to the felony and misdemeanor convictions prior to publishing the information to Plaintiff's prospective landlords.

7.     Defendants do not employ reasonable procedures to assure the maximum possible accuracy of the information they report regarding consumers. Defendants' failure to employ reasonable procedures resulted in Plaintiff's reports being grossly inaccurate.

8.     Defendants committed these violations pursuant to their standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

9.     Defendants' inaccurate reports cost Plaintiff the ability to rent the apartment units that were suitably accommodating of his needs, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

10.     As a result of the Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

11.     As a result of Defendants' conduct, action, and inaction, Plaintiff brings claims against Defendants for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

12.     Eric Anthony Rodriguez ("Plaintiff" or "Mr. Rodriguez") is a natural person residing in Orlando, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

13.     Defendant TransUnion Rental Screening Solutions, Inc. ("Defendant Trans Union") is a Delaware corporation doing business throughout the United States, including the State of Florida and in this District, and has a principal place of business located at 555 West Adams Street, Chicago, IL 60661, and can be served with process by way of its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

14.     Among other things, Defendant sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

15.     Defendant National Tenant Network, Inc. ("Defendant National") is an Oregon corporation doing business throughout the United States, including the State of Florida and in this District, and has a principal place of business located at 4800 Meadows Rd., Suite 300, Lake Oswego, OR 97035. Defendant National can be

served through its registered agent, C T Corporation System, at 780 Commercial St SE, Suite 100, Salem, OR 97301.

16.     Among other things, Defendant National sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant.  These reports are provided in connection with a business transaction initiated by the consumer.

17.     Defendants are consumer reporting agencies as defined in 15 U.S.C. § 1681a(f) because for monetary fees, they regularly engage in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

20.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

21.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

22.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

23.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

24.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the ones Defendants prepared in Plaintiff's name.

25.    The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

26.    In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like the Defendants, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

27.    The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

28.    Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

29.    Defendants disregarded their duties under the FCRA with respect to Plaintiff's tenant screening reports.

**DEFENDANT'S ILLEGAL BUSINESS PRACTICES**

30.    Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

31.    Tenant Screening Reports are generally created by running automated searches through giant databases of aggregated criminal record data.  The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

32.    Tenant Screening companies, like Defendants, collect millions of records from a number of sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

33.    Given that Defendants are in the business of selling tenant screening reports, Defendants should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

34.    Defendants place their business interests above the rights of consumers and report such inaccurate information because it is cheaper for Defendants to produce reports containing information that is inaccurate and incomplete than it is for Defendants to exert proper quality control over the reports prior to their being provided to Defendants' customers.

35.    Defendants report such erroneous and incomplete information because they want to maximize the automation of their report creation process, thereby

saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

36.     Defendants charge their customers the same price for reports that are grossly inaccurate as they do for accurate reports.

37.     Appropriate quality control review of Plaintiff's reports would have made clear that Defendants were reporting information belonging to another consumer.

38.     As providers of tenant screening reports, Defendants should be aware of the FCRA requirements and are likely members of the Professional Background Screening Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for an Apartment with 311 N Dollins Ave

39.     In or around October of 2023, Plaintiff began searching for a new apartment in Florida.  Specifically, Plaintiff was searching for an apartment that was in a safe neighborhood, clean, and within his budget.

40.     On October 25, 2023, Plaintiff applied, and paid a non-refundable application fee of $50.00, for a one-bedroom apartment at  311 N Dollins Ave.

41.     Plaintiff appreciated the apartment for its recent renovations, favorable location, and the landlord's adherence to stringent rules that contributed to a sense of privacy and security.

**Defendant Trans Union Published an Inaccurate Tenant Screening Report to The Landlord of 311 N Dollins Ave**

42.     The landlord of 311 N Dollins Ave contracted with Defendant Trans Union to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment.

43.     On October 25, 2023, Defendant Trans Union sold a tenant screening report about Plaintiff to the landlord of 311 N Dollins Ave , wherein Defendant Trans Union published information including a compilation of Plaintiff's criminal history.

44.     The tenant screening reports are a consumer reports regulated by the FCRA.

45.     Within that tenant screening report, Defendant Trans Union published inaccurate information about Plaintiff.

46.     Specifically, the tenant screening report included the following criminal records from Indian River County, Florida:

//

## ERIC RODRIGUEZ JR

Dataset: **FL Indian River Courts**

Last Updated Date: **2023-11-09**

Source: **FL Indian River Courts**

Vendor: **Tessera Data, Inc.**

DOB: **1981-XX-XX**    Age: **42**    SSN: **N/A**

Residence: **N/A**

**Aliases**
ERIC JR RODRIGUEZ

**Physical Features**
Physical Details

//bds.transunion.com/Members/AppResults/ReportSelected.aspx?FromAllResults=true

'23, 7:32 PM                                        TransUnion Background Data Solutions - Report Detail

Sex: **U**

**Person Physical Features**
No physical features listed

**Native Record Number**
Show Native Record Number

//

**Court Action**

Activity Type:  CRIMENAL/TRAFFIC

**Court Record ID**

Id:  312007CF000379AXXXXX

**Court**

**Organization Jurisdiction**

Jurisdiction Description:  CIRCUIT COURT

**Court Charge**

Effective Date:  2007-03-06

Charge Sequence (ID)
Id:  1

Charge Description:  ROBBERY WITH A FIREARM

**Charge Classification**

Charge Degree:  FELONY FIRST DEGREE

Charge Count:  1

**Charge Disposition**

Charge Disposition Date:  2008-07-17

Disposition:  ADJUDICATED GUILTY/DELINQUENT IN JUVENILE COURT

Charge Filing Date:  2007-03-07

**Charge Plea**

Plea Negotiated Indicator:  false

Plea Description:  NOT GUILTY/DENY

Plea Guilty Indicator:  false

Plea No Contest Indicator:  false

**Charge Statute**

Statute Code (ID)
Id:  812.13.2A

**Court Charge**

Effective Date:  2007-03-06

Charge Sequence (ID)
Id:  2

Charge Description:  SHOOTING OR THROWING DEADLY MISSILE IN PUBLIC

**Charge Classification**

Charge Degree:  FELONY SECOND DEGREE

Charge Count:  2

**Charge Disposition**

Charge Disposition Date:  2008-07-17

Disposition:  ADJUDICATED GUILTY/DELINQUENT IN JUVENILE COURT

Charge Filing Date:  2007-03-07

**Charge Plea**

Plea Negotiated Indicator:  false

Plea Description:  NOT GUILTY/DENY

Plea Guilty Indicator:  false

https://bds.transunion.com/Members/AppResults/ReportSelected.aspx?FromAllResults=true                10/11

---

11/22/23, 7:32 PM                TransUnion Background Data Solutions - Report Detail

Plea No Contest Indicator:  false

**Charge Statute**

Statute Code (ID)
Id:  790.19.

**Court Charge**

Effective Date:  2007-03-06

Charge Sequence (ID)
Id:  3

Charge Description:  THIRD DEGREE GRAND THEFT WHILE MASKED

**Charge Classification**

Charge Degree:  FELONY SECOND DEGREE

Charge Count:  3

**Charge Disposition**

Charge Disposition Date:  2008-07-17

Disposition:  ADJUDICATED GUILTY/DELINQUENT IN JUVENILE COURT

Charge Filing Date:  2007-03-07

**Charge Plea**

Plea Negotiated Indicator:  false

Plea Description:  NOT GUILTY/DENY

Plea Guilty Indicator:  false

Plea No Contest Indicator:  false

**Charge Statute**

Statute Code (ID)
Id:  812.014.

Appealed From Lower Court:  false

**Case Filing**

Activity Date:  2007-03-07

**Submitter Organization**

Organization name:  FL0310000

47.     The criminal record published by Defendant Trans Union about Plaintiff to the landlord of 311 N Dollins Ave *did not* belong to Plaintiff.

48.     Defendant Trans Union published inaccurate information about Plaintiff. The above-referenced information should not have been included in any tenant screening report about Plaintiff.

49.     Specifically, it is indisputable that prior to furnishing the report about Plaintiff to the landlord of 311 N Dollins Ave , Defendant Trans Union failed to consult widely available public court records in Indian River County, Florida, which indicate that the aforementioned records do not belong to Plaintiff.

50.     A cursory review of the widely available underlying public court records confirms that the records belong to an individual named Eric Rodriguez Junior (Convicted Felon Junior). Defendant Trans Union's unreasonable or non-existent procedures allowed Defendant Trans Union to publish a report about Plaintiff wherein Defendant Trans Union mixed the criminal records of Convicted Felon Junior into that same report.

51.     Had Defendant Trans Union actually consulted or obtained the widely available underlying public court records, it would have seen the obvious discrepancies between Convicted Felon Junior and Plaintiff.

52.     The discrepancies that should have caused Defendant Trans Union to realize Plaintiff is not the same person as Convicted Felon Junior include the following:

> (a)     Plaintiff's legal name is Eric Anthony Rodriguez (no name of Junior) but the name of the individual subject to the criminal record is identified in the underlying public court records as Eric Rodriguez Junior;
>
> (b)     The case reported is from Florida, whereas at the time of the of the case, Plaintiff lived in Pennsylvania;
>
> (c)     Plaintiff has no association with the address listed on the public record for the convictions at 351 Beech Avenue, Orlando, Florida, 32805;
>
> (d)     Plaintiff's Social Security number, which was provided to Defendant Trans Union is contained on the face of the tenant screening report is different than that of Convicted Felon Junior as confirmed by the underlying public court records.

53.     The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant Trans Union failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published

within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

54.     Had Defendant Trans Union followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing criminal records belong to Convicted Felon Junior who has a different name than Plaintiff (the different name being Junior), distinctive address history, and a different Social Security Number.

55.     In preparing and selling a consumer report about Plaintiff, wherein Defendant Trans Union published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant Trans Union failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**The Landlord of 311 N Dollins Ave Denies Plaintiff's Housing Application**

56.     On October 25, 2023, Plaintiff was notified through his Trans Union Smart Move account that his housing application was denied as a direct result of the criminal records reported by Defendant Trans Union.

57.     Plaintiff also received a phone call from his prospective landlord of 311 N Dollins Ave who communicated the denial, and identified the inaccurate criminal records reported by Defendant Trans Union to be the reason for the denial.

58.     On November 23, 2023, Plaintiff obtained a copy of the tenant screening report and was shocked and humiliated upon reviewing and realizing that

the criminal record of Convicted Felon Junior were published in the tenant screening report Defendant Trans Union sold about Plaintiff to the landlord of 311 N Dollins Ave.

59.    Plaintiff was very panicked, confused, and concerned about the impact of the records of Convicted Felon Junior being reported on the tenant screening report – specifically, the impact of the same on his future.

60.    Specifically, Defendant Trans Union matched Plaintiff and Convicted Felon Junior and published the criminal records of Convicted Felon Junior onto the tenant screening report about Plaintiff and sold that report to Plaintiff's prospective landlord.  This exculpatory public record information was widely available to Defendant Trans Union prior to publishing Plaintiff's tenant screening report to the landlord of 311 N Dollins Ave, but Defendant Trans Union failed to perform even a cursory review of such information.

61.    Defendant Trans Union's false report cost Plaintiff a housing opportunity that met his needs, including those attendant to affordability, safety, and proximity to work, friends, and family.

62.    Plaintiff was looking forward to living at 311 N Dollins Ave because it was in a safe neighborhood, was near his work, friends, and family, and was within his budget.

63.    Due to Defendant Trans Union's unreasonable procedures in the first place and despite Plaintiff's continued efforts to seek housing, Plaintiff's housing situation was left in disarray.

**Plaintiff Applies for an Apartment with Pine Hills Orlando**

64.    After being denied for the 311 N Dollins Ave rental, but before Plaintiff obtained and reviewed the tenant screening report produced to the landlord of 311 N Dollins Ave, Plaintiff applied for housing at Pine Hills Orlando.

65.    On or about October 25, 2023, Plaintiff began searching for another apartment in Florida.  Specifically, Plaintiff was searching for an apartment that was in a safe neighborhood, clean, and within his budget.

66.    On October 30, 2023, Plaintiff submitted an application for housing with Pine Hills Orlando.

67.    Once again, the Plaintiff appreciated the privacy and location of the new residence. Although not as aesthetically pleasing as the unit at 311 N Dollins Ave, the landlord demonstrated greater flexibility. Specifically, the landlord consented to a shorter-term lease, accommodating the Plaintiff's preferences.

68.    They reached an agreement stipulating that PC would initially pay three months' rent in advance, transitioning thereafter to a month-to-month arrangement. The agreed-upon rent amounted to 990 dollars per month.

69.     Plaintiff further paid a 400-dollar deposit, in addition to a 50-dollar application fee.

**Defendant National Published an Inaccurate Tenant Screening Report to Pine Hills Orlando**

70.     Pine Hills Orlando contracted with Defendant National to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment.

71.     On October 30, 2023, Defendant National sold a tenant screening report about Plaintiff to Pine Hills Orlando, wherein Defendant National published information including a compilation of Plaintiff's criminal history.

72.     The tenant screening report is a consumer report regulated by the FCRA.

73.     Within that tenant screening report, Defendant National published inaccurate information about Plaintiff.

74.     Specifically, the tenant screening report included the following criminal record from Orange and Indian River County, Florida:

| ERIC JUNIOR RODRIGUEZ D.O.B.: 07/15/1981 Source: Florida Orange County Circuit Court Match Type: Exact Name And DOB Match | COUNT 1. CR-PROVIDING FALSE ID TO LAW ENFORCEMENT OFF. | |
|---|---|---|
| | Case Number | 2006-MM-009300-A-O |
| | Offense Level | Misd |
| | File Date | 09/01/2006 |
| | Offense Date | 09/01/2006 |
| | Arrest Date | 09/01/2006 |
| | Disposition | Adjudicated Guilty |
| | Disposition Date | 10/03/2006 |
| | Plea | Nolo Contendere |
| | Plea Date | 10/03/2006 |
| | Statute | 901.36(1) |
| | Uniform Case Number | 482006MM009300000AOX |
| | Arresting Agency | Orlando Police Department |
| | Case Status | CLOSED |
| | Case Type | Misdemeanor |

**ERIC RODRIGUEZ**
D.O.B.: **07/15/1981**
Source:
**Florida Orange County Circuit Court**
Match Type:
**Exact Name And DOB Match**

### COUNT 1. CR-RESISTING OFFICER WITHOUT VIOLENCE

| | |
|---|---|
| Case Number | 2006-MM-005042-A-O |
| Offense Level | Misd |
| File Date | 05/11/2006 |
| Offense Date | 05/10/2006 |
| Arrest Date | 05/10/2006 |
| Disposition | Adjudicated Guilty |
| Disposition Date | 07/20/2006 |
| Plea | Nolo Contendere |

| | |
|---|---|
| Plea Date | 07/20/2006 |
| Statute | 843.02 |
| Uniform Case Number | 482006MM005042000AOX |
| Arresting Agency | Orlando Police Department |
| Case Status | CLOSED |
| Case Type | Misdemeanor |

**ERIC RODRIGUEZ**
D.O.B.: **07/15/1981**
Source:
**Florida Orange County Circuit Court**
Match Type:
**Exact Name And DOB Match**

### COUNT 1. CONTROLLED SUBSTANCE OFFENSE

| | |
|---|---|
| Case Number | 2003-CF-010126-A-O |
| Offense Level | Felony |
| File Date | 09/02/2003 |
| Offense Date | 08/15/2003 |
| Arrest Date | 08/15/2003 |
| Disposition | Adjudicated Guilty |
| Disposition Date | 12/11/2003 |
| Plea | Guilty (Admit) |
| Plea Date | 12/11/2003 |
| Statute | 893.13(1)(A)(1) |
| Uniform Case Number | 482003CF010126000AOX |
| Arresting Agency | Orlando Police Department |
| Case Status | CLOSED |
| Case Type | Criminal Felony |

**ERIC RODRIGUEZ**
D.O.B.: **07/15/1981**
Source:
**Florida Orange County Circuit Court**
Match Type:
**Exact Name And DOB Match**

### COUNT 1. CONTROLLED SUBSTANCE OFFENSE

| | |
|---|---|
| Case Number | 2003-CF-009469-A-O |
| Offense Level | Felony |
| File Date | 08/28/2003 |
| Offense Date | 08/01/2003 |
| Arrest Date | 08/01/2003 |
| Disposition | Adjudicated Guilty |
| Disposition Date | 12/11/2003 |
| Plea | Guilty (Admit) |
| Plea Date | 12/11/2003 |
| Statute | 893.13(1)(A)(1) |
| Uniform Case Number | 482003CF009469000AOX |
| Arresting Agency | Orlando Police Department |
| Case Status | CLOSED |
| Case Type | Criminal Felony |

**ERIC RODRIGUEZ**
D.O.B.: **07/15/1981**
AKA's:
**ERIC JUNIOR RODRIGUEZ**
Source:
**Florida Orange County Circuit Court**
Match Type:
**Exact Name And DOB Match**

| COUNT 1. CR-BATTERY ON A LAW ENFORCEMENT OFFICER | |
|---|---|
| Case Number | 2003-CF-009278-A-O |
| Offense Level | Felony |
| File Date | 08/28/2003 |
| Offense Date | 07/29/2003 |
| Arrest Date | 07/30/2003 |
| Disposition | Adjudicated Guilty |
| Disposition Date | 12/11/2003 |
| Plea | Guilty (Admit) |
| Plea Date | 12/11/2003 |
| Statute | 784.07(2)(B) |
| Uniform Case Number | 482003CF009278000AOX |
| Arresting Agency | Orlando Police Department |
| Case Status | CLOSED |
| Case Type | Criminal Felony |

**ERIC C RODRIGUEZ**
D.O.B.: **07/15/1981**
Source:
**Florida Orange County Circuit Court**
Match Type:
**Exact Name And DOB Match**

| COUNT 1. CR-RESISTING OFFICER WITHOUT VIOLENCE | |
|---|---|
| Case Number | 2002-MM-015343-A-O |
| Offense Level | Misd |
| File Date | 10/10/2002 |
| Offense Date | 10/05/2002 |
| Arrest Date | 11/08/2002 |
| Disposition | Adjudicated Guilty |
| Disposition Date | 11/19/2002 |
| Plea | Nolo Contendere |
| Plea Date | 11/19/2002 |
| Statute | 843.02 |
| Uniform Case Number | 482002MM015343000AOX |
| Arresting Agency | Orange County Sheriff Office |

| | |
|---|---|
| Case Status | CLOSED |
| Case Type | Misdemeanor |

**ERIC RODRIGUEZ**
D.O.B.: **07/15/1981**
AKA's:
**ERIC JUNIOR RODRIGUEZ**
Source:
**Florida Orange County Circuit Court**
Match Type:
**Exact Name And DOB Match**

| COUNT 1. TRESPASS | |
|---|---|
| Case Number | 2002-CF-011810-A-O |
| Offense Level | Misd |
| File Date | 12/17/2002 |
| Offense Date | 09/09/2002 |
| Arrest Date | 09/09/2002 |
| Disposition | Adjudicated Guilty |
| Disposition Date | 06/02/2003 |
| Plea | Guilty (Admit) |
| Plea Date | 06/02/2003 |
| Statute | 810.08(2)(A) |
| Uniform Case Number | 482002CF011810000AOX |
| Arresting Agency | Orange County Sheriff Office |
| Case Status | CLOSED |
| Case Type | Criminal Felony |

**COUNT 1. CONTROLLED SUBSTANCE OFFENSE**

**ERIC RODRIGUEZ**
D.O.B.: **07/15/1981**
Source:
**Florida Orange County Circuit Court**
Match Type:
**Exact Name And DOB Match**

| | |
|---|---|
| Case Number | 2002-CF-001187-A-O |
| Offense Level | Felony |
| File Date | 01/29/2002 |
| Offense Date | 01/24/2002 |
| Arrest Date | 02/02/2002 |
| Disposition | Adjudicated Guilty |
| Disposition Date | 04/29/2002 |
| Plea | Guilty (Admit) |
| Plea Date | 04/29/2002 |
| Statute | 893.13(6)(A) |
| Uniform Case Number | 482002CF001187000AOX |
| Arresting Agency | Orange County Sheriff Office |
| Case Status | CLOSED |
| Case Type | Criminal Felony |

**COUNT 1. CONTROLLED SUBSTANCE OFFENSE**

**ERIC RODRIGUEZ**
D.O.B.: **07/15/1981**
Source:
**Florida Orange County Circuit Court**
Match Type:
**Exact Name And DOB Match**

| | |
|---|---|
| Case Number | 2002-CF-001072-A-O |
| Offense Level | Felony |
| File Date | 01/26/2002 |
| Offense Date | 01/03/2002 |
| Arrest Date | 01/25/2002 |
| Disposition | Adjudicated Guilty |
| Disposition Date | 04/29/2002 |
| Plea | Guilty (Admit) |
| Plea Date | 04/29/2002 |
| Statute | 893.13(6)(A) |
| Uniform Case Number | 482002CF001072000AOX |
| Arresting Agency | Orlando Police Department |
| Case Status | CLOSED |
| Case Type | Criminal Felony |

**COUNT 1. CR-POSSESSION OF CONTROLLED SUBSTANCE**

**ERIC RODRIGUEZ**
D.O.B.: **07/15/1981**
Source:
**Florida Orange County Circuit Court**
Match Type:
**Exact Name And DOB Match**

| | |
|---|---|
| Case Number | 2001-CF-006048-A-O |
| Offense Level | Felony |
| File Date | 05/04/2001 |
| Offense Date | 05/03/2001 |
| Arrest Date | 05/03/2001 |
| Disposition | Adjudicated Guilty |
| Disposition Date | 08/22/2001 |
| Plea | Nolo Contendere |
| Plea Date | 08/22/2001 |
| Statute | 893.13(6)(A) |
| Obts | 0012898940 |
| Uniform Case Number | 482001CF006048000AOX |
| Arresting Agency | Orlando Police Department |
| Case Status | CLOSED |
| Case Type | Criminal Felony |

**ERIC RODRIGUEZ**
D.O.B.: **07/15/1981**
Source:
**Florida Orange County Circuit Court**
Match Type:
**Exact Name And DOB Match**

### COUNT 1. CR-RESISTING OFFICER WITHOUT VIOLENCE

| | |
|---|---|
| Case Number | 2000-CF-012118-A-O |
| Offense Level | Misd |
| File Date | 09/26/2000 |
| Offense Date | 09/06/2000 |
| Arrest Date | 09/06/2000 |
| Disposition | Adjudicated Guilty |
| Disposition Date | 11/06/2000 |
| Plea | Nolo Contendere |
| Plea Date | 11/06/2000 |
| Statute | 843.02 |
| Obts | 0012791639 |
| Uniform Case Number | 482000CF012118000AOX |
| Arresting Agency | Orlando Police Department |
| Case Status | CLOSED |
| Case Type | Criminal Felony |

### COUNT 2. CONTROLLED SUBSTANCE OFFENSE

| | |
|---|---|
| Case Number | 2000-CF-012118-A-O |
| Offense Level | Felony |
| File Date | 09/26/2000 |
| Offense Date | 09/06/2000 |
| Arrest Date | 09/06/2000 |
| Disposition | Adjudicated Guilty |
| Disposition Date | 11/06/2000 |
| Plea | Nolo Contendere |
| Plea Date | 11/06/2000 |
| Statute | 893.13(1)(A)(1) |
| Obts | 0012791639 |
| Uniform Case Number | 482000CF012118000AOX |
| Arresting Agency | Orlando Police Department |
| Case Status | CLOSED |
| Case Type | Criminal Felony |

**ERIC JUNIOR RODRIGUEZ**
D.O.B.: **07/15/1981**
Source:
**Florida Orange County Circuit Court**
Match Type:
**Exact Name And DOB Match**

### COUNT 1. CONTROLLED SUBSTANCE OFFENSE

| | |
|---|---|
| Case Number | 1999-CF-004737-A-O |
| Offense Level | Felony |
| File Date | 04/01/1999 |
| Offense Date | 03/11/1999 |
| Arrest Date | 04/05/1999 |
| Disposition | Adjudicated Guilty |

| | |
|---|---|
| Disposition Date | 08/09/1999 |
| Plea | Nolo Contendere |
| Plea Date | 08/09/1999 |
| Statute | 893.13(1)(A)(1) |
| Obts | 0011805008 |
| Uniform Case Number | 481999CF004737000AOX |
| Arresting Agency | Orange County Sheriff Office |
| Case Status | CLOSED |
| Case Type | Criminal Felony |

**ERIC RODRIGUEZ**
D.O.B.: **07/15/1981**
Gender/ Race:  **Male / Black or African American**
Offense County:**Indian River**
Source:
**Florida Indian River Clerk Of Court**
Match Type:
**Exact Name And DOB Match**

### COUNT 1. THIRD DEGREE GRAND THEFT WHILE MASKED

| | |
|---|---|
| Case Number | 2007CF000379A |
| File Date | 04/20/2007 |
| Offense Date | 03/06/2007 |
| Arrest Date | 04/24/2007 |
| Disposition | Guilty |
| Disposition Date | 07/17/2008 |
| Plea | Not Guilty |
| Statute | 812014 |
| Arresting Agency | INDIAN RIVER COUNTY SHERIFF'S OFFICE VERO BEACH |
| Conviction Date | 07/17/2008 |
| Notes | Local Case Number: 9200724736 |
| Case Type | Felony Second Degree |
| Court Name | Circuit |

### COUNT 2. SHOOTING DEADLY MISSILE

| | |
|---|---|
| Case Number | 2007CF000379A |
| File Date | 03/26/2007 |
| Offense Date | 03/06/2007 |
| Arrest Date | 03/06/2007 |
| Disposition | Guilty |
| Disposition Date | 07/17/2008 |
| Plea | Not Guilty |
| Statute | 79019 |
| Arresting Agency | INDIAN RIVER COUNTY SHERIFF'S OFFICE VERO BEACH |
| Conviction Date | 07/17/2008 |
| Notes | Local Case Number: 9200724736 |
| Case Type | Felony Second Degree |
| Court Name | Circuit |

### COUNT 3. ROBBERY WITH A DEADLY WEAPON WEARING MASK

| | |
|---|---|
| Case Number | 2007CF000379A |
| File Date | 03/26/2007 |
| Offense Date | 03/06/2007 |
| Arrest Date | 03/06/2007 |
| Disposition | Guilty |
| Disposition Date | 07/17/2008 |
| Court Fee | $626.90 |
| Plea | Not Guilty |
| Statute | 81213 2A |
| Arresting Agency | INDIAN RIVER COUNTY SHERIFF'S OFFICE VERO BEACH |
| Conviction Date | 07/17/2008 |
| Notes | Local Case Number: 9200724736 |
| Case Type | Felony First Degree |
| Court Name | Circuit |

### COUNT 4. ROBBERY WITH A DEADLY WEAPON WEARING MASK

| | |
|---|---|
| Case Number | 2007CF000379A |
| File Date | 03/26/2007 |
| Offense Date | 03/06/2007 |
| Arrest Date | 03/06/2007 |
| Disposition | Guilty |
| Disposition Date | 07/17/2008 |
| Court Fee | $626.90 |
| Plea | Not Guilty |

| | |
|---|---|
| Statute | 81213 2A |
| Arresting Agency | INDIAN RIVER COUNTY SHERIFF'S OFFICE VERO BEACH |
| Conviction Date | 07/17/2008 |
| Notes | Local Case Number: 9200724736 |
| Case Type | Felony First Degree |
| Court Name | Indian River Clerk of Court |

75.    The criminal records published by Defendant National about Plaintiff to Pine Hills Orlando *did not* belong to Plaintiff.

76.    Defendant National published inaccurate information about Plaintiff. The above-referenced information should not have been included in any tenant screening report about Plaintiff.

77.    Specifically, it is indisputable that prior to furnishing the report about Plaintiff to Pine Hills Orlando, Defendant National failed to consult widely available public court records in Orange and Indian River County, Florida, which indicate that the aforementioned records do not belong to Plaintiff.

78.    A cursory review of the widely available underlying public court records confirms that the records belong to an individual named Eric Rodriguez Junior ("Convicted Felon Junior").  Defendant National's unreasonable or non-existent procedures allowed Defendant National to publish a report about Plaintiff wherein Defendant National mixed the rental history of Convicted Felon Junior into that same report.

79.    Had Defendant National actually consulted or obtained the widely available underlying public court records, it would have seen the obvious discrepancies between Convicted Felon Junior and Plaintiff.

80.     The discrepancies that should have caused Defendant National to realize Plaintiff is not the same person as Convicted Felon Junior include the following:

(a)     Defendant National included an image of Convicted Felon Junior, which bears no resemblance to the Plaintiff.

(b)     The case reported is from Florida, whereas at the time of the of the case, Plaintiff lived in Pennsylvania;

(c)     Plaintiff has no association with the address listed on the public record for the convictions at 351 Beech Avenue, Orlando, Florida, 32805;

(d)     Plaintiff's Social Security number, which was provided to Defendant National is contained on the face of the tenant screening report is different than that of Convicted Felon Junior as confirmed by the underlying public court records.

81.     The sole reason the inaccurate criminal records were reported as belonging to Plaintiff was that Defendant National failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

82.    Had Defendant National actually consulted or obtained the widely available underlying public court records, it would have seen the obvious discrepancies between Convicted Felon Junior and Plaintiff.

83.    In preparing and selling a consumer report about Plaintiff, wherein Defendant National published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant National failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### Pine Hills Orlando Denies Plaintiff's Housing Application

84.    On or about October 30, 2023, Plaintiff was notified by Pine Hills Orlando's landlord that his housing application was denied as a direct result of the criminal record reported by Defendant National.

85.    Plaintiff explained that the criminal record did not belong to him, and that he has been having issues with inaccurate reportings on his tenancy screening reports.

86.    However, the landlord informed Plaintiff he was unable to help with this.

87.    Plaintiff was very panicked, confused, and concerned about the impact of the records of Convicted Felon Junior being reported on the tenant screening report – specifically, the impact of the same on his future.

88.     Shortly thereafter, Plaintiff obtained a copy of the tenant screening report and was shocked and humiliated upon reviewing and realizing that the records of Convicted Felon Junior were published in the tenant screening report Defendant National sold about Plaintiff to Pine Hills Orlando.

89.     Specifically, Defendant National matched Plaintiff and Convicted Felon Junior and published the criminal record and judgment of Convicted Felon Junior onto the tenant screening report about Plaintiff and sold that report to Plaintiff's prospective landlord.  This exculpatory public record information was widely available to Defendant National prior to publishing Plaintiff's tenant screening report to Pine Hills Orlando, but Defendant National failed to perform even a cursory review of such information.

90.     The injuries suffered by Plaintiff as a direct result of Defendants' erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendants' conduct would have given rise to causes of action based on defamation and invasion of privacy.

91.     As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## <u>CLAIMS FOR RELIEF</u>

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

92.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

93.     Each Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

94.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

95.     At all times pertinent hereto, the above-mentioned tenant screening reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

96.     Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening report they sold about Plaintiff as well as the information they published within the same.

97.     As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

98.     Defendants willfully violated 15 U.S.C. § 1681e(b) in that their conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

99.     Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.   Determining that Defendants negligently and/or willfully violated the FCRA;

ii.   Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.   Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.


RESPECTFULLY SUBMITTED this 29th day of December 2023

<div style="margin-left: 40%;">

**CONSUMER ATTORNEYS**
*/s/ Catherine Tillman*
Catherine Tillman, Esq., (FL Bar No. 0057663)
8245 N. 85th Way
Scottsdale, AZ 85258
T: (941) 263-7310
F: (718) 715-1750
E: ctillman@consumerattorneys.com

*Attorney for Plaintiff*
*Eric Anthony Rodriguez*

</div>