# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

ERIC ANTHONY RODRIGUEZ,

     Plaintiff,

     v.

NATIONAL TENANT NETWORK, INC.,

     Defendant.

Case No. 6:23-cv-2487-ACC-RMN

## REPORT AND RECOMMENDATION

     This cause comes on for consideration without oral argument on Plaintiff Eric Anthony Rodriguez's Motion for Default Judgment (Dkt. 33) and Amended Motion for Default Judgment (Dkt. 43) ("Motions"), which were referred to me for a report and recommendation. For the following reasons, I respectfully recommend that the Motions be granted in part and denied in part.

## I. BACKGROUND

### A. Factual Allegations

     Mr. Rodriguez filed this action on December 29, 2023, Dkt. 1, asserting a single claim against Defendant National Tenant Network, Inc. ("Defendant National") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq., arising out of a tenant screening

report that Defendant National published to Plaintiff's potential landlord, which included numerous criminal records that did not belong to Plaintiff.

Plaintiff alleged that, in October 2023, he began searching for an apartment in Florida, and his initial application for a lease fell through due to inaccurate criminal records within the tenant screening report supplied by former co-defendant Trans Union to the landlord.[1] *Id.* ¶¶ 12, 42–63.

Unaware of the reason for the rejection, Plaintiff applied to rent another property. Dkt. 1 ¶ 64. Defendant National, which is a professional Consumer Reporting Agency ("CRA") as defined by FCRA, provided tenant screening reports on prospective tenants for the second property to determine whether the prospective tenant was eligible to rent an apartment. *Id.* ¶ 70. The tenant screening report on Plaintiff contained multiple inaccuracies. *Id.* ¶ 71. The report included thirteen felony and misdemeanor cases that should not have been associated with Plaintiff. *Id.* ¶¶ 74, 76.

Defendant National failed to consult widely available public court records, which indicate that the records do not belong to Plaintiff, but rather, belong to an individual named Eric Rodriguez Junior ("Convicted Felon Junior"). *Id.* ¶ 77. Defendant National's "unreasonable or non-

---

[1] The claim against Trans Union has been dismissed upon stipulation of the parties pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). Dkt. 35.

existent procedures" resulted in Defendant National mixing the rental history of Convicted Felon Junior into Plaintiff's report. *Id.* ¶ 78. Had the Defendant consulted or obtained the widely available underlying public court records, it would have noted the discrepancies below: a picture of the Convicted Felon Junior contained in the report bears no resemblance to Mr. Rodriguez, the venue of the case was in Florida, but the Plaintiff resided in Pennsylvania at the time, Plaintiff was not associated with the address listed on the public record for the convictions, and most importantly, the social security numbers of the individuals did not match. *Id.* ¶ 80.

Based on this inaccurate information, Pine Hills Orlando denied Plaintiff's application for the studio apartment due to his failure to pass the background check. *Id.* ¶¶ 84, 86. Soon after, Plaintiff obtained a copy of the tenant screening report and was shocked and humiliated upon reviewing and realizing that the records of Convicted Felon Junior were published in the tenant screening report that Defendant National prepared about Plaintiff. *Id.* ¶ 88.

Plaintiff contends Defendant National failed to follow reasonable procedures to assure the report was as accurate as maximally possible, in violation of FCRA, 15 U.S.C. § 1681e(b). *Id.* ¶ 83. Tenant screening reports are generally created by running automated searches through

giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports. *Id.* ¶ 31. Tenant screening companies, like Defendant National, collect millions of records from several sources with data from county, state, and federal level sources. The data included on the reports are often not obtained directly from court records on an individual basis but is purchased in bulk or scraped from court websites. *Id.* ¶ 32. Plaintiff alleges that appropriate quality control review of Plaintiff's reports would have made clear that Defendant National was reporting information belonging to another consumer. *Id.* ¶ 37.

As a result of Defendant's violations of the FCRA, Plaintiff alleges he suffered a range of actual damages including, without limitation, loss of housing opportunities; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment. *Id.* ¶ 91. Plaintiff seeks damages for a negligent violation of FCRA pursuant to 15 U.S.C. § 1681o, and a willful violation of FCRA pursuant to 15 U.S.C. §1681n.

## B.    Procedural History

Plaintiff served Defendant National with a summons and complaint on January 30, 2024, and filed a return of service indicating Defendant National was served with the summons and complaint on January 5, 2024, by delivering a copy of those documents on "National Tenant Network, Inc. c/o C T Corporation System, 780 Commercials St Se, Salem, OR 97301." Dkt. 9 at 4. On February 8, 2024, Plaintiff also served Defendant National by delivering a copy of those documents to "Laura McMaster, Bookkeeper at 4800 Meadows Rd Ste 300, Lake Oswego, OR 07035." Dkt. 18 at 4. Defendant failed to appear, answer, or otherwise respond to the Complaint, so Plaintiff moved for clerk's entry of default (Dkt. 21), which was entered as to Defendant National on March 1, 2024. Dkt. 23. Plaintiff moved for default judgment against Defendant National, Dkt. 33, and then filed an amended motion for default judgment, Dkt. 43. On August 21, 2024, I issued an order to show cause why I should not recommend that judgment be entered in favor of Plaintiff and ordered the parties to appear before the Court on September 10, 2024, at 10:00 a.m. EST. Dkt. 42. I put the parties on notice that failure to respond to the show cause order may result in a recommendation that judgment is due to be entered in Plaintiff's favor. Defendant did not appear at the hearing.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure establish a two-step process for obtaining default judgment. First, when a party against whom a judgment for affirmative relief is sought fails to plead or otherwise defend as provided by the Federal Rules, the Clerk may enter default. Fed. R. Civ. P. 55(a). Second, after obtaining a clerk's default, the Plaintiff must move for default judgment. Fed. R. Civ. P. 55(b).

But "default judgments are generally disfavored." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015). "Entry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" *Id.* (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[2] "[W]hile a defaulted defendant is deemed to 'admit[ ] the plaintiff's well-pleaded allegations of fact,' he 'is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (quoting *Nishimatsu*, 515 F.2d at 1206). "[A] default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997). "Conceptually, then, a motion for default judgment is like a

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

reverse motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245.

Finally, if default judgment is warranted, then the Court must next consider whether the Plaintiff is entitled to the relief requested. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *See* Fed. R. Civ. P. 54(c).

## III. ANALYSIS

### A. Jurisdiction

The Court has subject matter jurisdiction as Plaintiff's claims arise under federal law—the FCRA. *See* 28 U.S.C. § 1331; *see also Carlisle v. Nat'l Commer. Servs.*, No. 1:14-cv-515, 2017 WL 1075088, at *4 (N.D. Ga. Feb. 22, 2017).

In determining whether default judgment is proper, a court must also consider whether personal jurisdiction over the defaulting Defendant. *Stephenson v. Mountain Run Sols., LLC*, No. 8:21-cv-2256, 2023 WL 2561365, at *4 (M.D. Fla. Mar. 17, 2023) (citing *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 734 F.2d 639 (11th Cir. 1984)). The Complaint alleges Defendant National is an Oregon corporation doing business throughout the United States, including in the State of Florida and in this District. Dkt. 1 ¶ 15. For a nonresident defendant, the Court must "engage in a two-part analysis to determine whether it has

jurisdiction over the nonresident defendant and can exercise that jurisdiction only if both prongs are satisfied." *Abramson v. Walt Disney Co.*, 132 F. App'x 273, 275 (11th Cir. 2005) (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).

"The first prong of that analysis requires examination of whether a basis of jurisdiction is provided under the forum's long arm statute." *Abramson*, 132 F. App'x at 275. Florida Statute § 48.193(1)(a) provides that a person or entity submits himself to the jurisdiction of the State of Florida by "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Fla. Stat. § 48.193(1)(a)(1). The well-pleaded allegations of Plaintiff's Complaint reflect that Defendant National carried on business in the State, thereby subjecting itself to personal jurisdiction in Florida.

The second prong is also satisfied as there are sufficient minimum contacts to satisfy due process concerns. *Abramson*, 132 F. App'x at 275. The complaint alleges the rental company offering the lease contracted with Defendant National to conduct tenant screening reports on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment, and that on October 30, 2023, Defendant National sold a tenant screening report about Plaintiff, wherein Defendant National published information including a compilation of

Plaintiff's criminal history. Dkt. 1 ¶¶ 70, 71. I find that these allegations are sufficient to demonstrate that the Court has personal jurisdiction over Defendant National, based on its business activities within the state.

## B. The Entry of Default

I find that default was properly entered here. Rule 55 of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The Clerk has entered default as to Defendant National based on Plaintiff's showing that it was served[3] with the summons and complaint but did not answer or otherwise respond to Plaintiff's Complaint. *See* Dkt. 21.

## C. Liability

Before granting default judgment, the Court "must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire and Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (unpublished decision). "While 'a default is not treated as an

---

[3] I find service was proper here as CT Corporation System is a registered agent for Defendant. Dkt. 9 at 4; Fed. R. Civ. P. 4(e)(1); Or. R. Civ. P. 7D(2)(a),7D(3)(b)(i).

absolute confession by the defendant of his liability and of the plaintiff's right to recover,' a defaulted defendant is deemed to 'admit[ ] the plaintiff's well-pleaded allegations of fact.'" *Id.* (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975)).

As a threshold matter, Plaintiff has properly alleged that Defendant National falls within the statutory definition for a CRA. Dkt. 1 ¶¶ 2, 17. The FCRA defines a CRA as:

> [A]ny person which, for monetary fees . . . regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). Furthermore, a tenant screening report is a "consumer report" regulated by the FCRA. *Id.*; *see Rhodes v. First Advantage Background Servs. Corp.*, No. 6:22-cv-2399, 2024 WL 1526155, at *6 (M.D. Fla. Mar. 5, 2024). *See* Dkt. 1 ¶ 26.

As for liability under the FCRA, Plaintiff's factual allegations set forth above, taken as true by operation of Defendant's default, establish that Defendant negligently failed to comply with the requirements of the FCRA, but do not establish a willful violation, and judgment is due to be entered accordingly.

I address first the allegations of negligence. To establish a violation of § 1681e(b), a consumer must show "the agency's report contained factually inaccurate information, that the procedures it took in preparing and distributing the report weren't 'reasonable,' and that damages followed as a result." *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021).[4]

## 1.    Factually Incorrect Report

Plaintiff has adequately pleaded an objectively and readily verifiable inaccuracy in his tenant report. Dkt. 1 ¶¶ 71–80. *See Losch*, 995 F.3d at 945 (holding that plaintiff sufficiently proved that consumer reporting agency reported "factually inaccurate information" where purported debt had been discharged and plaintiff "was no longer liable for the balance nor was he 'past due' on any amount") (citing *Midland Funding, LLC v. Johnson*, 581 U.S. 224, 233 (2017)); *Kanani v. Experian Info. Sols., Inc.,* No. 6:23-cv-2483, 2024 WL 3729484, at *3 (M.D. Fla. Aug. 8, 2024). Here, the records of Convicted Felon Junior were included

---

[4] In *Erickson*, the Eleventh Circuit reaffirmed "that to make out a claim for a violation of § 1681e(b), a plaintiff must show at least two things: that a consumer report was inaccurate and that the inaccurate report caused him to suffer damages . . . [A]bsent those showings—particularly the inaccurate report—the reasonableness of the reporting agency's procedures turns out not to matter." *Erickson*, 981 F.3d at 1251 (emphasis added); *accord Aldaco*, 921 F.3d at 689 (consumer must show she suffered injury because of any inaccurate information).

in the tenant screening report in error and are not Plaintiff's records. Dkt. 1 ¶¶ 4, 73, 75, 88; Dkt. 43-1, ¶ 4. Accordingly, I find that Plaintiff has adequately pled factual allegations that Defendant Tenant's report contained factually inaccurate information.

### 2.    Reasonableness of Procedures

Next, as alleged and in accordance with case law, Plaintiff has shown Defendant Tenant failed to follow reasonable procedures in violation of the FCRA. A CRA is not liable under section 1681e(b) if a report, even a factually inaccurate report, was the product of "reasonable procedures." 15 U.S.C. § 1681e(b). Here, the Plaintiff does not allege he notified Defendant National of the error and that it thereafter failed to investigate, but rather, that the tenant screening report itself arose out of legally insufficient procedures. In *Losch,* the court emphasized the CRAs are in a different position if they are not made aware of the inaccurately reported information:

> Our sister circuits have laid out two corollary principles. First, a reporting agency's procedures will not be deemed unreasonable unless the agency has a reason to believe that the information supplied to it by a data furnisher is unreliable. Because "lenders report many millions of accounts to Experian daily," requiring it to examine each report individually for errors would be unduly costly. But on the flip side of the same coin, when a "credit reporting agency . . . has been notified of potentially inaccurate information in a consumer's credit report[,] [it] is in a very different position than one who has no such notice." That's because "once a claimed inaccuracy is pinpointed,

a consumer reporting agency conducting further investigation incurs only the cost of reinvestigating that one piece of disputed information." We think those principles make good sense, and we now adopt them.

995 F.3d at 945 (citations omitted).[5] Importantly, the Eleventh Circuit also found, "[t]o the extent that any of Losch's claims under § 1681e alleges that Experian acted unreasonably in preparing any credit reports ***before he informed it of the relevant inaccuracy***, the district court properly granted Experian summary judgment for that claim." *Id.* at 937, 945 n.6 (emphasis added). In other words, *Losch* addressed whether a CRA willfully violated the FCRA. *See id.* at 948 n.7. "To establish a willful violation" of the FCRA, Plaintiff must show that Defendant Tenant "either knowingly or recklessly" violated the statute. *Losch*, 995 F.3d at 947 (quoting *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017)).

---

[5] After receiving Losch's dispute letter, Experian sent an automated consumer data verification ("ACDV") form to the furnisher, Nationstar, seeking to verify the alleged debt. *Losch*, 995 F.3d at 941. Nationstar responded that the loan balance was correct and added past-due amounts that had since accumulated. *Id.* Faced with the question of whether Experian "reasonabl[y]" discharged its report-preparation and reinvestigation obligations by forwarding the ACDV form regarding the contested information to Nationstar, the court stated "[w]e can't say that Experian's procedures were reasonable as a matter of law." *Id.* at 945. "Once Losch informed Experian of a factual inaccuracy in his reports, Experian needed only to investigate that single, alleged error." *Id.* For this reason, the Eleventh Circuit found that Experian was in a "very different position" than before Losch contacted it. *Id.* (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 286–87 (11th Cir. 1994)). The court held a genuine issue of material fact existed as to whether Experian was negligent in discharging its obligations to conduct a reasonable investigation and reinvestigation into the disputed information. *Id.* at 946–47.

Plaintiff has not established a willful violation of the Act. *See Smith v. LexisNexis Screening Solutions, Inc.*, 837 F.3d 604 (6th Cir. 2016). The plaintiff in *Smith*—David A. Smith—was not retained by his employer after it received a criminal-background report from the defendant, which erroneously reported a felony conviction for another person named David O. Smith. *Id.* at 607–08. The defendant argued that any FCRA violation was not willful and, in support, noted that this "single mix-up" was the first of its kind (that is, an erroneous criminal record based on first name, last name, and date of birth). *Id.* at 610. Smith asserted that the defendant's failure to require a middle-name match willfully violated the FCRA. *Id.* The Sixth Circuit sided with the defendant and held that the violation "did not result from Lexis's disregarding a high risk of harm which it should have known." *Id.* at 611. That was in part because "a single inaccuracy, without more, does not constitute a willful violation of the FCRA." *Id.* (citing *Nelski v. Trans Union, LLC*, 86 Fed. App'x. 840, 844 (6th Cir. 2004)). So too here.[6]

---

[6] Unlike here, when many inaccuracies are known to the CRA, courts have found willful violations. *Williams v. First Advantage LNS Screening Sols., Inc.*, 238 F. Supp. 3d 1333, 1345–46 (N.D. Fla. 2017) ("Unlike *Smith*, this wasn't a single inaccuracy; it was one of thousands. Nor was it First Advantage's first FCRA violation based on its use of a first name, last name, and date of birth match; in fact, it happened twice to the same individual in this case."), *aff'd in part, rev'd in part and remanded sub nom, Williams v. First Advantage LNS Screening Sols. Inc*, 947 F.3d 735 (11th Cir. 2020). There are no such allegations in this case, and Plaintiff's

But Defendant National still may be held liable under the FCRA if it failed to exercise reasonable care in generating that inaccurate report, *Williams* 238 F. Supp. 3d at 1347 (citing *Spence v. TRW, Inc.*, 92 F.3d 380, 383 (6th Cir. 1996); *Johnson v. Equifax, Inc.*, 510 F. Supp. 2d 638, 647 (S.D. Ala. 2007) ("[The plaintiff] bears the burden to establish that the procedures followed by [the defendant] were unreasonable.") The *Williams* court noted:

> an agency can be found negligent for failing to adopt a policy requiring additional identifiers for common names, *Smith*, 837 F.3d at 610, because the "jury could conclude that a reasonably prudent CRA, when presented with . . . a common name [like David Smith], would have required additional identifying information—like a middle name—to heighten the accuracy of its report." *Id.* Moreover, when preparing the criminal-background report at issue, the defendant possessed a credit report for the plaintiff—David A. Smith—which could have been cross-referenced with the name on the criminal record—David Oscar Smith. *Id.* Nonetheless, it failed to do so.

*Williams* 238 F. Supp. 3d at 1347. As in *Williams*, Defendant National "could have required an additional identifier—like an address—to further ensure the accuracy of its reports." *Id.* at 1348. Here, Plaintiff alleges that numerous data could have been used as secondary indicators of his identity—that is, if Defendant had simply cross-referenced the known information about Plaintiff with the publicly available data associated

counsel admitted at the hearing that the Complaint fails to allege any facts in support of the willfulness claim.

with the criminal cases, Defendant would have known that Plaintiff was not the same person as Convicted Felon Junior. These alleged indicators include the image of the Plaintiff, the criminal case state location, the mismatched Florida address, and the associated social security numbers. Dkt. 1 ¶ 80 (a)–(d). I find that these allegations sufficiently support a claim that Defendant National negligently violated the FCRA.

### 3.    Damages

Next, the Court must determine if Plaintiff has alleged sufficiently that he suffered damages as a result of the inaccurate tenant screening report. This is so because actual damages are an element of a FCRA claim based on negligent noncompliance. *Hill v. Ocwen Loan Servicing, LLC*, 369 F. Supp. 3d 1324, 1337 (N.D. Ga. 2019) (citing *King v. Asset Acceptance, LLC*, 452 F. Supp. 2d 1272, 1280 (N.D. Ga. 2006) (observing that actual damages are an element of a claim under 15 U.S.C. § 1681o).

Plaintiff alleges he suffered a range of actual damages including loss of housing opportunities, damage to his reputation, loss of sleep, lasting psychological damage, loss of capacity for enjoyment of life, and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment. *Id.* ¶ 91.

This suffices under FCRA. Actual damages for negligent violation of the FCRA include "damages for humiliation, mental distress or injury

to reputation and creditworthiness." *Smith v. E-Backgroundchecks.com, Inc.*, 81 F. Supp. 3d 1342, 1364 (N.D. Ga. 2015); *Abdo v. Sallie Mae*, No. 3:11-cv-111, 2014 WL 3053172, at *2 (M.D. Fla. July 7, 2014) (explaining that plaintiff's testimony that he suffered shame, embarrassment, humiliation, emotional distress, mental distress, stress, and hurt feelings due to furnisher's violation of the FCRA sufficiently created issue of material fact as to whether plaintiff suffered damages); *Jordan v. Equifax Info. Sys.*, 410 F. Supp. 2d 1349, 1356 (N.D. Ga. 2006) (explaining that actual damages under the FCRA may include damages for humiliation, anger, frustration, embarrassment, or mental distress, even if the consumer has suffered no out of pocket losses).

Based on the foregoing, I recommend that the motion for default judgment be granted in part as to the negligent violation of FCRA. But without a single fact from which the Court could infer actual knowledge or recklessness, Plaintiff's allegations are insufficient to show that Defendant National's error went beyond mere negligence.

### D.    Actual Damages for Negligence

Having determined that a default judgment is warranted on Plaintiff's FCRA claim, the Court must "determine the amount and character of the recovery that should be awarded." *Patray v. Nw. Publ.*, 931 F. Supp. 865, 869 (S.D. Ga. 1996) (additional citation omitted).

Section 1681o of the FCRA governs civil liability for negligent noncompliance with the statute. *Collins v. Experian Info. Solutions, Inc.*, 775 F.3d 1330 (11th Cir. 2015). That section provides, in relevant part, that "[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of . . . any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. § 1681o(a)(1).

Plaintiff originally requested $15,000 in actual damages; $15,000 in punitive damages; $1,000 in statutory damages; court costs of $140.00 and attorneys' fees of $11,365. Dkt. 43 at 14–17; *see also* Dkts. 43-2, 43-3, 43-4. Because I find that a claim for willful violation of the FCRA fails (which to her credit, Plaintiff's counsel conceded at argument) and because statutory and punitive damages are unavailable for negligent FCRA violations, I recommend denying these rewards.[7] At the hearing,

---

[7] Under 15 U.S.C. § 1681n(a), "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer" for actual, statutory, or punitive damages. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009). The Supreme Court has held that "reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)." *Safeco*, 551 U.S. at 71; *see also Harris*, 564 F.3d at 1310 ("A violation is 'willful' for the purposes of the FCRA if the defendant violates the terms of the Act with knowledge or reckless disregard for the law.").

Plaintiff's counsel conceded that the only actual damages Plaintiff now seeks are emotional damages.

A court may conduct an evidentiary hearing before entering default judgment if a hearing is needed to determine the amount of damages. Fed. R. Civ. P. 55(b)(2)(B). But an evidentiary hearing is not a per se requirement of entry of default judgment. *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). No hearing is needed "where all essential evidence is already of record." *Id.* That evidence may take the form of affidavits. *Carlisle v. Nat'l Com. Servs., Inc.*, 722 F. App'x 864, 870 (11th Cir. 2018); *see also Brown v. Everest Moving & Storage, Inc.*, No. 12-62530-civ, 2013 WL 12126001, at *2 (S.D. Fla. Aug. 20, 2013) ("Affidavits based on personal knowledge can be sufficient evidence to establish damages.").

Here, I noticed the hearing on damages, Dkt. 42, and Plaintiff supplemented his request for damages with the filing of the Amended Motion for Default Judgement, with attachments. Dkt. 43. At the hearing, Plaintiff's counsel advised that Plaintiff was relying on the court filings and presented no further evidence in support of his request for damages. Plaintiff explains in his affidavit that when he reviewed the tenant screening report, he was "shocked, embarrassed and humiliated" and that he "was very upset and frustrated that [he] missed out on this housing opportunity due to [the] false report," and he "was also very worried about

being able to find a place to live." Dkt. 43-1 ¶¶ 4, 5. He also attests that the reporting of the criminal records "caused [him] stress, anxiety, and embarrassment" which "drastically reduced the quantity and quality of [his] sleep because [he] was unsure how long it would take to correct this issue," "[t]his frustration drastically reduced [his] ability to focus at work because [he] could not stop thinking about the situation" and "[t]his frustration damaged [his] personal relationships causing [him] to be irritable and distracted." *Id.* ¶ 7 (a)–(c).

I find that an award of damages for mental distress is due to be granted under these circumstances. In *Marshall v. Ability Recovery Servs., LLC*, No. 2:17-cv-226, 2018 WL 5276240, at *7 (N.D. Ga. Aug. 2, 2018), *report and recommendation adopted*, 2018 WL 5276215 (N.D. Ga. Aug. 21, 2018), the Court explained:

> Actual damages for negligent violation of the FCRA include damages for humiliation, mental distress or injury to reputation and creditworthiness. Further, in FCRA cases, a plaintiff is not required to produce evidence of emotional distress beyond his own testimony. At the hearing on Plaintiff's motion for default judgment, he testified about the harmful results of Defendant's FCRA violation—specifically, his inability to purchase a home due to the disputed amount reflected on his credit report and the resulting emotional distress it caused him, as well as damaged reputation among his veteran peers, who were aware of his inability to utilize USAA's home loan program as a result of his alleged indebtedness. Plaintiff testified credibly as he detailed the emotional distress he experienced when he failed to qualify for a home purchase and as he explained how his

> relationship with his family suffered in the wake of that
> denial.

*Id.* (internal quotations and citations omitted). In this case, although Plaintiff did not testify, he has likewise provided sufficient evidence of his emotional damages in the form of his affidavit and his well-pleaded allegations.

The *Marshall* court then awarded actual damages for the negligent violation of FCRA in the amount of $30,000, relying on similar cases with "varying amounts of evidence and testimony concerning FCRA violations." 2018 WL 5276240, at *7 (citing *Brannon v. Bridge Capital Corp.*, No. 1:06-cv-996, 2008 WL 2225791, at *2–3 (M.D. Ala. May 27, 2008) (awarding $25,000 per plaintiff for damages from mental anguish, emotional distress, embarrassment, and humiliation); *Pinner v. Schmidt*, 805 F.2d 1258, 1265 (5th Cir. 1986) (awarding $25,000 in compensatory damages for embarrassment from several credit denials at retail stores, which resulted in "temporary public humiliation"); *Morris v. Credit Bureau of Cincinnati*, 563 F. Supp. 962, 969 (S.D. Ohio 1983) (awarding $10,000 for negligent FCRA violation where the plaintiff "did not prove he was completely denied credit, only that the acceptance of his loan was delayed because of inaccurate information")). Other courts have granted awards ranging from $4,500. *See Thomas v. Pennyrile Fin. Grp., LLC*, No. 3:22-cv-355, 2023 WL 4996611, at *3 (W.D. Ky. June 7, 2023) (requested $4,500

in damages for embarrassment, humiliation, and emotional distress was reasonable and appropriate where Plaintiff's credit denied in public), *report and recommendation adopted sub nom. Thomas v. Jefferson Cap. Sys., LLC*, 2023 WL 4996544 (W.D. Ky. July 11, 2023); *Carlisle*, 722 Fed. App'x at 869 (affirming default judgment award of $7,000 for emotional distress based on violations of the FDCPA, the GFBPA, and the FCRA).

Given awards in cases with roughly similar claims range from $4,500 through $30,000, I find that the requested actual damages, $15,000, is reasonable and supported by Plaintiff's testimony. I therefore recommend awarding the requested amount.

### E.     Attorney Fees

As noted above, Plaintiff seeks to recover court costs of $140.00 and attorneys' fees of $11,365. In my show cause order, I explained that in his supplemental motion, "Plaintiff need not include declarations or supporting documents for an award of attorney's fees and costs, if any. The Court will address any request for an award of attorney's fees and non-taxable costs post-judgment using the procedure outlined in Local Rule 7.01." Dkt. 42 at 2, n.1. Nevertheless, the Amended Motion for Default Judgment included specific fees and costs requested. Dkt. 43-2, 43-3, 43-4.

Plaintiff is cautioned that what constitutes a reasonable attorneys' fee is a matter within the Courts discretion. *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988). A prevailing party may only recover an objectively reasonable attorney fee, known as the "lodestar" fee, which is the product of the number of hours reasonably expended on the litigation times the reasonable hourly rates. *Marchisio v. Carrington Mortg. Servs., LLC,* Case No. 14-14011-civ, 2020 WL 4350725, at *6 (S.D. Fla. July 29, 2020) (citing *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999)). It is the burden of the party seeking the fees to prove the reasonableness of the hourly rates and the number of hours worked. *Barnes*, 168 F.3d at 427.

As I explained to Plaintiff's counsel at the hearing, pursuant to Local Rule 7.01 and in interest of efficiency, while it was appropriate for Plaintiff to request an award of fees and costs on Plaintiff's claims, *see* 15 U.S.C. § 1681n(a)(3), the Court's Local Rules provide for consideration of a fee award after judgment is entered in favor of Plaintiff. *See* Local Rule 7.01(a) (providing bifurcated procedure for claiming attorney's fees and related non-taxable expenses). Nevertheless, I recommend the Court find Plaintiff is entitled to an award of attorney's fees and require Plaintiff to file a supplemental motion that complies with the requirements of Local Rule 7.01(c) within 45 days of the entry of judgment.

Costs that are taxable under 28 U.S.C. § 1923 should be requested by completing the appropriate form (that is, Form AO 133) using the procedure set forth in Federal Rule of Civil Procedure 54(d).

## IV. CONCLUSION

Accordingly, I respectfully **RECOMMEND**:

1.     Plaintiff's Motion for Default Judgment (Dkt. 33) and Amended Motion for Default Judgment (Dkt. 43) be **GRANTED in part** against Defendant National Tenant Network, Inc. as to the allegations of negligent violation of the FCRA and as to Plaintiff's request for a determination of entitlement to an award of attorney's fees, but **DENIED** in all other respects, including as to an alleged willful violation of the FCRA;

2.     Plaintiff be **awarded** actual damages in an amount of $15,000; and

3.     Plaintiff be **directed** to file a supplemental motion on the amount of a fee award in accordance with Local Rule 7.01(c) no more than 45 days after judgment is entered in his favor.

## NOTICE TO PARTIES

"Within 14 days after being served with a copy of [a report and recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A

party may respond to another party's objections within 14 days after being served with a copy." *Id*. A party's failure to serve and file specific objections to the proposed findings and recommendations alters review by the district judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

**Entered** in Orlando, Florida, on November 13, 2024.

_____
ROBERT M. NORWAY
*United States Magistrate Judge*

Copies furnished to:

Hon. Anne C. Conway

Counsel of Record

National Tenant Network, Inc.
4800 Meadows Rd. Ste. 300
Lake Oswego, Oregon 97035